Mr. Justice Humphreys
delivered the opinion of the court:
On the 3d day of March, 1870, one John M. Jolly obtained .a judgment on the law side of this court against Samuel P. Brown and Austin P. Brown, partners under the style of S. P. Brown & Son, for the sum of four thousand six hundred and ninety-four dollars and five cents, ($4,694.05.) This judgment is still unsatisfied.
At the date of this judgment Samuel P. Brown was the owner and in possession of valuable parcels of land in this District, and near the city of Washington, which would have been more than sufficient to pay the judgment. This is ad *338 rnitted, and it is also admitted that the judgment is a lien upon the lands in question. On the 20th of June, 1870, the Freedman’s Savings and Trust Company loaned to said firm of S. P. Brown & Son ten thousand dollars, for which the firm executed a promissory note, payable to the order of Samuel P. Brown, at twelve months, with interest. Said Samuel indorsed the note, and to secure its payment, and before the loan, the said Samuel and his wife executed and delivered a deed in trust to David L. Eaton, trustee, for said Trust Company, the complainants. This deed was regularly recorded in the proper registry office for the record of deeds, in the city of Washington, District of Columbia, on the 27th of June, 1870. On the 26th of June, 1871, and at various periods after that date down to April 24, 1872, inclusive, the National Savings-Bank of this District loaned to said firm of' Brown & Son various sums of money, amounting to thirty thousand dollars and more. To secure these several loans the said Samuel P. executed, at the times of the same, deeds in trust, conveying to trustees parcels of his estate, no parcel of which is the same as those conveyed to the benefit and. for the security of the complainants. As far as the case discloses, neither complainants nor defendant knew, actually, of the unsatisfied judgment at the time of the respective loans. The note to the complainants not having been paid at maturity, the trustee, Eaton, on the 12th of October, 1872, sold the lots conveyed to complainants, and the said company, through its agents, purchased the same, and have made sale,, with indemnity to the purchasers of the same. Said sales-were made in 1873, before the execution issued. It comes incidentally through the proceedings in the contest that the case of Jolly against said Brown had'been appealed to the Supreme Oourt of the United States, and the same, being held by supersedeas, was lost sight of. No point is made on this branch of the case, but the judgmentis treated by all the parties as a subsisting lien upon all the lands embraced in the deeds both to comifiainants and defendants. On the 16th of July, 1874, defendant, the National Savings-Bank, purchased the judgment from Jolly, all of which is conceded to be regular, and to invest all right in the judgment in the said bank. The bank, immediately after the sale and assignment by Jolly, *339 had execution issued, and all the parcels of land included in. the conveyance to complainant, except two or three lots,, were levied upon and published for sale by the marshal. The bill was filed in August, 1874, to restrain this sale, and the bill seeks to force the judgment to be satisfied, as far as it can be, from the lands not included in complainant’s deed., and if any balance remains, the offer is made to satisfy it.
On the 4th of May, 1875, the justice sitting in equity ordered and signed a decree enjoining the sale of the lots which had been levied upon, and which are included in the conveyance to complainants, until the real estate belonging to the said Samuel P. Brown, on the 20th day of June, 1870, bound by said judgment, and not involved in said conveyance to complainants, should be sold, and the proceeds of such sale applied to the payment of the judgment.
This cause was well, comprehensively, and fairly argued by the solicitors of the parties, and we have been greatly aided by the openness with which they respectively presented the legal questions. We think the decree in this case impregnable.
The English mode and doctrine of tacking mortgages and liens might exist, and the learning on the doctrine of actual and constructive notice would be applicable, if our registry laws were not in force. The possession of real estate would be very uncertain if we were to depart from the accustomed rule of appealing to the record of deeds, and resort to the uncertain practice of parol testimony of notice. The statutes in this country were designed to give permanency to possessions and facility to sales by establishing a central depository of the evidences of title. Section 447 of the Revised Statutes, act of April 29,1838, fixes, establishes, and prescribes the order and priority of liens, titles, and evidences of titles. Of course, unfairness, imposition, or fraud iu any matter of deeds and conveyances would upset, overturn,, and destroy a pretended transaction. But the record is notice to the world. That record itself may be attacked where a fraudulent use is attempted to be made of it, but when that is done, the matter therein is to be expunged, and not to be taken as a record. The registry is notice, however, and so long as it is unassailed for any of the causes which avoid *340 it, it must staud as of even more force in law than mere parol evidence of notice.
So far as the deeds in this case are involved there can be no difficulty, for the statute ascertains the relation they bear to each other. This is also the case with the judgment in its relation to the deeds. It is prior, and must be satisfied. It was notice to the world, and would operate so long as untainted. It makes no difference that the judgment and the junior deeds are held by the same creditor; they must each be satisfied in the order of priority. The only difficulty may be, whether it is in the power of the court to force the judgment-creditor to resort to and exhaust one fund, where he has a lien upon two and his contestant has a lien on one only, before going upon the fund, which alone is bound to the subsequent creditor. On this point we think the p ower is too well established to doubt it. The power exists to do equity; equity follows the law. The statute ascertains and settles that the judgment binds the property in advance of the deeds to both. The statute ascertains and settles that by the registry; the first deed is to have priority of the second. The judgment was notice to both, and binds all the property equally. It would not be equity to suffer the judgment to be satisfied out of the property to its exhaustion, which really was bound to a debt specifically, and the remaining property could not be reached by the creditor, when it can be reached by the judgment. Here the levy was made, exclusively, upon lots which were subject to a mortgage preceding the mortgages of the judgment-creditor, the mortgage and judgment cred-tor being the same.
By the rule we state, that the record is notice, this creditor took his mortgage with notice of a prior one. Both the judgment and the complainant’s mortgage must be satisfied before the last mortgage can claim participation, and the contest must really be between the judgment and the first mortgage. The judgment-creditor has a lien upon two funds; the mortgage-ereditor has a lien upon one only, and the rule is that he must first exhaust that fund to which he may resort and the other cannot. After section 447, Revised Statutes, the act of 1838 has settled that “all deeds of trust and mortgages shall take effect and be valid, as to all subsequent *341 purchaser's for valuable consideration, without notice, and as to all creditors,” from the time of proof and delivery to the recorder. Section 448 prescribes and directs that, “ if two or more deeds of the same property, after having been provided, be delivered to the recorder on the same day, that which shall have been first sealed and delivered shall have preference in law.” Section 449 makes even a title-bond or other written contract in relation to land, if recorded, “notice to all subsequent purchasers.”
We have concluded, by a majority of the court, that we are called upon, by rules too firmly established to be unsettled, to affirm the order and decree of restraint in this case.